In re REMINGTON AUTOMOBILE & MOTOR CO. et al.

(Circuit Court of Appeals, Second Circuit.    March 26, 1907.)

No. 202.

**1. BANKRUPTCY—CORPORATIONS—UNPAID STOCK SUBSCRIPTIONS—ASSESSMENT BY TRUSTEE.**

Where a corporation, at the time it became a bankrupt, could have laid an assessment on certain of its stockholders, whose stock was not full paid, such right passed by the bankruptcy to the trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 230.]

**2. SAME—PROCEDURE.**

Where, at the time a corporation became a bankrupt, certain of its stock issued was not full paid, the bankruptcy court, on the petition of the bankrupt's trustee for leave to levy an assessment on such stockholders, was bound to determine whether, at the time of the issue of any particular share, the full value was or was not paid in, whether any subsequent payments had been made on account thereof, whether the corporation was indebted in excess of assets, and the amount of such indebtedness.

**3. JUDGMENT—RES JUDICATA—ISSUES.**

In a plenary action by the trustee of a bankrupt corporation to recover an assessment levied against the holders of unpaid stock, the decision of the bankruptcy court, authorizing such assessment, was res judicata as to the amount paid by the stockholder for his stock, the indebtedness of the corporation, and the amount of the assessment, the stockholder being only entitled to make any individual defense he might have to such action.

**4. BANKRUPTCY—CORPORATION—ASSESSMENT ON UNPAID STOCK.**

An order authorizing the trustee of a bankrupt corporation to levy an assessment on certain of the corporation's unpaid stock should not provide for execution against the stockholders for the respective amounts found due on such assessment, which was collectible only by plenary action against the stockholders.

**5. SAME—PROOF OF INDEBTEDNESS—CLAIMS.**

On an application of the trustee of a bankrupt corporation for leave to levy an assessment on unpaid stock, the corporation's indebtedness was properly proved by presentation of the proofs of claim.

**6. CORPORATIONS—LIABILITY OF STOCKHOLDERS—UNPAID STOCK.**

Laws N. J. 1896, p. 284, c. 185, § 21, declares that where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy its debts, each stockholder shall pay on each share held by him the sum necessary to complete the amount of such share, as fixed by the charter of the corporation, or such proportion thereof as is necessary to satisfy corporate debts. *Held*, that where a corporation directed the sale of certain of its stock of the par value of $100 per share at $25, and that the proceeds be used for regular expenses, the original purchasers of such stock were subject to assessment for the balance of the par value thereof, or so much as was necessary for the payment of corporate debts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 879.]

**7. SAME—STOCK ISSUED FOR PROPERTY—VALUATION—BONA FIDE PURCHASERS.**

The stock of a corporation to the amount of $8,000 was issued for property valued at the time for only $6,000. This stock was marked "full-paid" and certain of it was thereafter purchased in the open market by persons who, on request for information, were informed by the corporation's manager at its office that the stock was full paid. *Held*, that such stockholders, on the corporation becoming a bankrupt, were not liable

to assessment to the amount of the difference between the value of the property and the par value of the stock.

[Ed. Note.—For cases in point see Cent. Dig. vol. 12, Corporations, § 973.]

8. SAME.

Laws N. J. 1896, p. 293, c. 185, § 49, authorized corporations to issue full-paid stock for property, and declared that, in the absence of fraud, the judgment of the corporation's directors as to the value of the property should be conclusive. A corporation organized under such act contracted with a city's board of trade to remove its plant to such city in consideration of the board's purchase of shares of the company's stock at a price less than par, and to furnish the corporation a free site for its buildings. Certificates purporting to be full paid were issued to the board and sold to subscribers at the same price the board paid for it; the board also procuring a conveyance to the corporation of the site, which was accepted in fulfillment of the contract. *Held*, that such stock would be regarded as full-paid, and that neither the board nor purchasers from it were liable to further assessments for the benefit of creditors of the corporation after bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 973.]

9. SAME.

A bona fide purchaser of certain of such board of trade stock from the corporation, under the belief that the stock issued to him was issued pursuant to the board of trade agreement, but which in fact had been issued by the corporation to be sold for cash at less than par, was not bound to pay future installments on such stock.

[Ed. Note.—Liability of transferrors and transferees of corporate stock for assessments, see note to Campbell v. American Alkali Co., 61 C. C. A. 322.]

Appeal from the District Court of the United States for the Northern District of New York.

This cause comes here upon appeal from an order of the District Court, Northern District of New York, which set aside certain contracts made by the bankrupt corporation with its various stockholders, found that certain of its shares represented stock which was not full paid, and ordered that a call and assessment be made upon the holders of such shares to an amount sufficient in each case to make the stock full paid. As to certain other of the stockholders it was further adjudged that they were not liable for any unpaid subscriptions. The opinion below is reported in 139 Fed. 766.

L. M. Southworth and George E. Dennison, for appellant.

F. G. Fincke, C. H. Searl, W. G. Miller, and Fuller & Miller, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The case is an intricate and complicated one, because of the issues of stock made from time to time to different individuals under different circumstances. The district judge has fully and carefully stated the facts necessary to be considered, and has set forth the relevant documents in full. It would be a waste of time to restate them here, except so far as may be necessary to an understanding of the different conclusions hereinafter expressed.

### The Right to Make Assessment.

The Remington, etc., Company is a New Jersey corporation, and subject to the following statutory provisions (chapter 185, p. 277, Laws N. J. 1896):

"Sec. 21. Stockholders liable until subscriptions are fully paid.—Where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy its debts and obligations, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share, as fixed by the charter of the corporation, or such proportion of that sum as shall be required to satisfy such debts and obligations."

"Sec. 48. Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this act, except as hereinafter provided in case of the purchase of property, and no loan of money shall be made to a stockholder or officer thereof; and if any such loan be made the officers who make it, or assent thereto, shall be jointly and severally liable, to the extent of such loan and interest, for all the debts of the corporation until the repayment of the sum so loaned.

"Sec. 49. Any corporation formed under this act may purchase mines, manufactories or other property necessary for its business, or the stock in any company or companies owning mining, manufacturing or producing materials, or other property necessary for its business, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full paid stock and not liable for any further call, neither shall the holder thereof be liable to any further payment under any of the provisions of this act; and in the absence of actual fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive; and in all statements and reports of the corporation to be published or filed this stock shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported in this respect according to the fact."

Had the corporation not become bankrupt, it could have laid an assessment upon such of its stockholders as were liable for further calls to make up full payment, and the right to make an assessment and call passed by the bankruptcy to the trustee. The Supreme Court, in Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, holds that the proper practice in such cases is for the trustee to file petition in the bankruptcy court for an order directing him to make an assessment and call upon the unpaid stock of the corporation for the purpose of paying its debts. In order to determine whether such an order should be made, it is necessary for the court to examine into and decide certain questions of fact, e. g., whether at the time of the issue of any particular share the full value was or was not paid in, whether any subsequent payments were made on account of it, whether the corporation was indebted in excess of assets, and what is the amount of its indebtedness. We are unanimously of the opinion that the practice followed in this case was correct, and that the decision of the District Court as to any question the decision of which was necessary to the making of the order will be res adjudicata in any subsequent proceeding between the trustee and any stockholder who received notice of the proceeding. Thus, in a plenary action against a stockholder to enforce assessment, he cannot be heard to question the findings made in this proceeding as to the amount paid for the stock, as to the indebtedness of the corporation, or as to the amount of the assessment; but he may present and make proof of any individual defense which he may have to such action. In this connection it may be noted that the phraseology of the order is such that it might be contended that execution for the respective amounts might be issued against the individuals named. This should be corrected.

The writer is further of the opinion that, inasmuch as the stockholder is to be concluded as to the amount of corporation indebtedness by

the finding in the bankruptcy court, he is entitled to have that amount proved by the best evidence, if he appears and asks for it. In the .case at bar the indebtedness was proved merely by presentation of the proofs of claim. To this counsel for stockholders objected, and claimed the right to cross-examine whoever might swear to the debt. His contention was overruled and' exception reserved. The writer is of the opinion that this was reversible error, but the majority does not think so.

### The Ilion Stock.

Certain shares of stock were issued to citizens of Ilion, N. Y., under a resolution which directed that they "be issued to be sold at $25 per share, and that the proceeds of such sale be placed in the treasury to be used for regular expenses." Nothing further was ever paid in on account of such stock. The District Court held that each share of such stock was not issued as "full paid," and that each holder thereof was liable for $75. We are of the opinion that such stock was not full paid and is liable to assessment. A majority of the court find in section 21, quoted supra, sufficient warrant for such assessment without discussing the question on general principles of corporation law. We are all of the opinion that the amount of each individual assessment can be collected only by plenary action. The persons who hold such stock (except Taber, hereinafter referred to) are the original subscribers who took it under the resolution above referred to, and apparently under an express contract with the corporation that it should locate its factory and carry on its business in Ilion. This contract was broken by the corporation, and we express no opinion as to whether that breach of contract may be availed of as a defense to an action to recover the assessment from an individual stockholder.

### The Quick Stock.

This was stock issued to the amount of $8,000 for property which was valued at the time at $6,000 only. The Circuit Court held that the original subscribers were liable for $25 a share, and no one disputes the correctness of that finding. Four persons who now hold the stock were not original subscribers. They bought in ignorance of the transaction, the certificates they received were marked "full-paid," and they were informed by the manager of the company, from whom they made inquiries before purchasing, that it had been issued for property and was full paid. Very many authorities are cited on the briefs, but not one of them holds that a stockholder, who is not a subscriber, but who buys in good faith in the open market stock which is marked full paid, and which he is informed at the office of the corporation is in fact full paid, can be held liable for the proportion of its face value which may be then unpaid. None of the New Jersey cases, construing the statute of that state, to which we are referred, deal with the question. They are concerned with stockholders, who were original subscribers. The authorities cited in Cook on Stock and Stockholders, §§ 50, 51, sustain the views above expressed. The decision of the District Court as to the four persons who bought shares of this "Quick" stock from original subscribers is affirmed.

### The Chamber of Commerce Stock.

Several hundred shares of the stock were issued to persons designated by the Board of Trade (or Chamber of Commerce) of the city of Utica. Each person so receiving stock paid $30 a share in cash. The District Court held that they were not liable for the additional $70 per share, and a majority of this court concur in that conclusion. The documents will be found printed in full in the opinion below. The stock was issued under a resolution that:

"An option be given to the Utica Chamber of Commerce until February 23d for the securing of the permanent location of this company in the city of Utica upon condition that they supply us with $30,000 in cash through the sale of our stock at $30 per share, and upon further condition that they supply us with a factory site of from three to four acres to our satisfaction, the same to be deeded to the company free and clear of all incumbrances. The above conditions being complied with, 1,000 shares of our capital stock is to be issued, in the name of whoever the Utica Chamber of Commerce specifies at $30 per share, each share full paid and nonassessable."

This was subsequently modified by reducing $30,000 to $15,000, and 1,000 to 500. Thereafter the Chamber of Commerce did obtain an option to buy on reasonable terms a site with buildings upon it available for a plant (the original agreement called for a vacant site only), and tendered the same to the company with $1,000 as performance of its contract, which was accepted by the corporation. A majority of the court think the transaction was one directly with the Chamber of Commerce, and that it came within the provisions of section 49 of the New Jersey statute cited supra, and that the holders of such stock are not liable for assessments thereon, upon the theory that it was not full paid.

### Taber Stock.

One W. E. Taber, a machinist of Utica, having heard of the arrangement made by the Chamber of Commerce, went to the secretary of that body and applied for 10 shares. The secretary gave him a letter to the manager of the company. He went to the latter and said he wanted 10 shares of Chamber of Commerce stock. The latter gave him a certificate for 10 shares, which he represented to be such stock and took $30 a share from Taber. As the district judge found:

"He acted in entire good faith and in the belief that he was obtaining the stock under and pursuant to the Chamber of Commerce agreement as set out in the circular, and that said Chamber of Commerce had provided for full payment of said stock. The certificates were delivered to him as Chamber of Commerce stock, paid for as such, and accepted as such."

The manager gave him a certificate which represented 10 shares of "Ilion" stock, which the original holders thereof had returned to the company. The liability of a subscriber or stockholder to pay future installments on his stock is wholly contractual. Taber certainly made no express contract to that effect, and we are of the opinion that the circumstances do not warrant the holding that there was an implied contract to do so.

As to the rulings of the District Court touching other issues of stock, no error was assigned.

With the exception of the Taber stock, therefore, the order of the District Court is affirmed, and the cause remitted, with instructions to add a clause to the effect that it shall be without prejudice to any defenses which individual stockholders may have to a plenary action to collect the amount of their respective assessments. As to the Taber stock, the order is reversed.