In re MONARCH CORPORATION.

(District Court, D. Connecticut. March 2, 1910.)

1. BANKRUPTCY (§ 250*)—COURTS—JURISDICTION—ASSESSMENT ON STOCKHOLD-ERS.

Where the affairs of a bankrupt corporation were being administered in a court of bankruptcy, such court had jurisdiction to grant a petition of the trustee to levy an assessment against stockholders on unpaid stock ; the corporation's officers, directors, and stockholders being amenable to the court's authority, at least so far as their dealings with the corporation were concerned, regardless of their residence.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*

Jurisdiction of federal courts of suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 250*)—CORPORATIONS—POWER OF TRUSTEE.

The trustee in bankruptcy of a corporation has all the powers originally invested in the board of directors, and may ask for an assessment on the corporation's unpaid capital stock to such an amount as will be needed to pay debts and expenses, regardless of the original terms of the stock issue.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

3. BANKRUPTCY (§ 250*)—CORPORATIONS—LEVY ON STOCK—JURISDICTION.

That a plenary suit may be brought by the trustee of a bankrupt corporation to recover unpaid installments on the corporation's stock without a specific levy of an assessment by the bankruptcy court does not prevent such court from making such a levy on petition of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

In the matter of the bankruptcy of the Monarch Corporation. On petition of Norman Leeds, trustee, for an assessment on stockholders. Petition granted.

The following is the petition referred to in the opinion:

That the said bankrupt was a corporation duly organized and existing under the general incorporation laws of the state of Connecticut. Said corporation was organized about January 13, 1906, and began its business operations soon thereafter, continuing until March 1, 1908, when said corporation became so financially embarrassed that it was compelled to suspend its business, being unable to meet its liabilities as they became due. Whereupon, on March 16, 1908, an involuntary petition in bankruptcy was filed against said corporation in the District Court of the United States for the District of Connecticut, and thereafter, on the 14th day of April, 1908, said corporation was duly adjudged a bankrupt by said District Court.

Your petitioner at a meeting of creditors called on the 12th day of May, 1908, was elected trustee of the estate and effects of the said bankrupt, which election was duly confirmed by John W. Banks, Esq., referee in bankruptcy, and your petitioner qualified as such trustee on the 13th day of May, 1908.

Your petitioner since said May 13, 1908, has been and is now the duly elected acting and qualified trustee of said bankrupt.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The general purposes and objects of said corporation were the manufacturing of and dealing in appliances, apparatus, machinery, and devices of all kinds for fighting fire and chemical compounds used for the purpose of extinguishing fire.

At the date of the adjudication of said corporation as a bankrupt, its outstanding capital stock was $500,000, all of which at that date was subscribed for, taken, and held. Said capital stock was divided into 5,000 shares of $100 each, of which 2,500 shares were preferred, and 2,500 shares were common. Said stock was held and owned almost entirely by the organizers and original stockholders of said corporation, who had from time to time acted as directors of said corporation, elected its officers, and who held and owned said stock as stock in a corporation represented and published to the world as having a stock of $500,000, upon the faith of which it was enabled to and did create large liabilities for the carrying on of the business of manufacturing fire extinguishers.

Your petitioner attaches to this petition, and prays that it may be made and considered a part hereof, a certain statement marked "Exhibit A," showing who the said stockholders are, the amount of stock held by each, how acquired, etc. The said stockholders, and each of them, held and owned, and do now hold and own, certificates of stock for their shares of stock in said corporation, executed by affixing the seal of the corporation and the signatures of the president and treasurer thereof.

Of said capital stock, amounting to $500,000, $25,000 was issued for cash; the remainder, amounting to $475,000, was issued for and in consideration of the assignment to said corporation of two certain United States patents, No. 545,351 and No. 610,127, as more fully appears in the vote passed at the meeting of incorporators of said corporation, held on January 16, 1906, and a vote of the meeting of directors held upon said date, which votes are as follows:

"Vote of Incorporators: Whereas, George H. Carpenter offers to cause to be transferred to this company, for and in consideration of the issue to himself and his associates, of $475,000.00 of the full-paid nonassessable capital stock of this company, certain patents covering certain inventions relating to the use of carbonic acid gas and apparatus for containing carbonic acid gas, which are more particularly described as follows: United States patent No. 545,351, dated August 27, 1895, and United States patent No. 610,127, dated August 30, 1898, both issued to Victor Durafort, for the development of which patents this company is organized: Now, therefore, be it resolved, that the stockholders of the company declare the said patents to be in their judgment of the reasonable value of $475,000.00; and further be it resolved, that the directors of the company be authorized to issue capital stock of the company, full-paid and nonassessable, to the extent of $475,000.00, to said George H. Carpenter, William C. Hill, Harlan W. Brush and Leonard D. Baldwin, for and in consideration of the assignment to this company of said patents.

"Vote of Directors: Whereas, the incorporators and subscribers for the capital stock of the company have examined into the value of the Durafort inventions and the United States patents covering the same, and have, in a resolution duly adopted, at the first meeting of the company, expressed their assent that the same should be acquired for the purposes of the company, and that $475,000.00 of the capital stock of the company should be issued as full-paid and nonassessable against the said patents in said resolution described; and whereas, each of the members of the board of directors has for himself investigated the value of such inventions: Now, therefore, be it resolved, that the board of directors adjudge and declare said patents, to wit, certain patents covering certain inventions relating to the use of carbonic acid gas, and apparatus for containing carbonic acid gas, which are more particularly described as follows: United States patent No. 545,351, dated August 27, 1895, and United States patent No. 610,127, dated August 30, 1898, both issued to Victor Durafort, to be of the fair and reasonable value of $475,000.00; and further be it resolved, that the company issue its full-paid and nonassessable stock to the extent of $475,000.00 in consideration of the transfer of said patents to the Monarch Corporation. The secretary reported that George H. Carpenter and William C. Hill had executed an assignment of certain patents

177 F.—30

covering certain inventions relating to the use of carbonic acid gas and apparatus for containing carbonic acid gas which are more particularly described as follows: United States patent No. 545,351, dated August 27, 1895, and United States patent No. 610,127, dated August 30, 1898, both issued to Victor Durafort, referred to in the foregoing resolution, to the Monarch Corporation, and had filed with him copies of such patents and of the assignments of the same, to the said George H. Carpenter and William C. Hill, together with a written direction that the capital stock of the company to be issued against the assignment of said patents be issued to the following named persons in the amounts set opposite their respective names, to wit: George H. Carpenter, $175,000.00; William C. Hill, $175,000.00; Harlan W. Brush, $100,000.00; Leonard D. Baldwin, $25,000.00."

The following resolution was regularly made, seconded and unanimously adopted:

"Resolved: That the officers of the company be directed to issue $475,000.00 of the stock of the company in the amounts set opposite the names of the respective persons named in the written direction of George H. Carpenter and William C. Hill heretofore filed with the company in satisfaction of the subscriptions made by said George H. Carpenter, William C. Hill, Harlan W. Brush and Leonard D. Baldwin for stock of the company, to be paid in property."

At said meeting of incorporators, of the five incorporators and subscribers to the capital stock, George H. Carpenter, Harlan W. Brush, Joseph O. Roe, and William C. Hill were present in person; Leonard D. Baldwin was present by proxy; and at the said directors' meeting held January 16th, the said Joseph O. Roe, William C. Hill, George H. Carpenter, Harlan W. Brush, and Leonard D. Baldwin were all present, constituting the entire board.

Thereafter, and for the consideration of the assignment of said patents as aforesaid, the capital stock of said corporation to the amount of $475,000 was issued to the said George H. Carpenter, Harlan W. Brush, Joseph O. Roe, Leonard D. Baldwin, and William C. Hill.

From time to time, certain shares of said capital stock have been transferred by said original stockholders, and thereupon new certificates have been issued for the same, as more fully appears in Exhibit A.

As to these assignees of stock, your petitioner is not informed as to whether they received their stock with knowledge of the facts and conditions under which it was originally issued, or whether they or any of them are bona fide purchasers without notice.

Said United States patents, No. 545,351 and No. 610,127, have never been transferred or assigned to said Monarch Corporation, or to your petitioner, as trustee, although he has made demand for the same upon all the stockholders whose names appear upon the books of said corporation as holders of certificates of capital stock.

Your petitioner represents that while said stockholders, as more fully appears in Exhibit A, hold certificates of stock amounting in the aggregate to $500,000, they, or either of them, have not paid to the corporation or its trustee said $500,000, or any part thereof, except the sum of $25,000 aforesaid, nor have said stockholders assigned or transferred to said corporation, or its trustee, said United States patents, No. 545,351 and No. 610,127, but that said capital stock to the amount of $475,000 was issued without any consideration whatsoever.

Your petitioner attaches hereto Exhibit B, and prays that it may be made and considered a part of this petition, showing the amount of stock held by each stockholder and the amount due on the same.

Your petitioner claims that by the charter of said corporation the laws of Connecticut and the general principles of law governing corporations, upon the failure to transfer to the corporation said United States patents, Nos. 545,351 and 610,127, said stock and subscriptions thereto became payable in cash, and that all of said stockholders have a liability resting upon them to pay your petitioner for the benefit of the creditors of said corporation such part of the amount unpaid by them on said stock as may be necessary to pay such part of the debts and liabilities of said corporation as cannot be dis-

charged and paid off by the available assets in the possession of your petitioner.

Your petitioner represents that at the date of said adjudication the affairs of said corporation were in a very embarrassed and complicated condition, and much time has necessarily been consumed and considerable expense incurred in liquidating and collecting the assets of the corporation, and in enforcing its contracts, and in opposing claims attempted to be established in said bankrupt court. The property of the corporation on hand at the date of adjudication in bankruptcy has been disposed of as rapidly as seemed consistent to the interest of all concerned, until at the present time no property remains on hand not reduced to cash, except 2,200 unfinished extinguishers of the appraised value of $67.22, the title to which is in controversy before said bankrupt court.

Your petitioner is informed and believes that in other cases similar to this the bankrupt courts have made assessments on the capital stock upon an approximate showing of the bankrupt's financial condition, which can now be done by your petitioner with reasonable certainty.

Of the said stockholders, as your petitioner is informed, a majority live in the states of New York and New Jersey. Your petitioner is also informed and believes that a majority of these stockholders are men of pecuniary responsibility, and intend to oppose all efforts made to enforce the liability claimed by your petitioner, which opposition will render necessary suits in the states of New York and New Jersey and other jurisdictions to recover any assessments made by this court.

The entire assets, including the aforesaid 2,200 unfinished extinguishers at their appraised value, amount approximately to $572.51; the debts proved and unpaid amount to $54,783.32. This leaves $54,210.81 to be paid, together with the costs of your petitioner in administering and settling the affairs of said bankrupt, which may be a considerable amount in case these proceedings should be contested, as well as the suits against each individual stockholder to recover the assessments. These said costs, expenses, and attorney's fees your petitioner estimates at $25,000, which sum may be increased or diminished according to the amount of litigation necessary in collecting said assessments. This makes a total of $79,210.81 to be assessed against said stockholders.

Your petitioner believes that an assessment of 20 per cent. upon the par value of each share of stock in said corporation, if credited with the amount paid on said capital stock, would equalize the burden upon the stockholders and at the same time bring into the hands of your petitioner a sufficient amount to pay the debts of the corporation.

Your petitioner, therefore, prays that he may be authorized and directed to make a call and assessment of $20 upon each share of capital stock, crediting any amount paid by any such stockholder upon his respective shares, and only requiring the stockholders to pay the difference between said call and assessment and the amount paid thereon, and to make a call and assessment for said difference.

Your petitioner further prays that the court will order and direct the details of such call and the service of notice upon each stockholder, if such notice be required, and this without prejudice to a further call and assessment upon said stock if the same should become necessary.

Seymour & Day, for trustee.
Martin Conboy, for Harlan W. Brush, a stockholder, etc.


PLATT, District Judge. The petition will precede this memorandum.

Two objections are urged against it: First. Lack of jurisdiction over the stockholders who reside in other states. Second. Lack of power to grant the request for a specific assessment upon the capital stock, which is said to be in large part unpaid for.

The first objection is easily disposed of. The bankrupt corporation

is within the jurisdiction of this court, and its officers, directors, and stockholders, in so far as their dealings with the bankrupt are concerned, must to that extent, surely, be amenable to its authority.

As to the second objection: The trustee in bankruptcy has all the powers originally invested in the board of directors. He can ask for an assessment upon the capital stock to such an amount as shall be needed to pay debts and expenses, provided the stock shall be found to be in fact partly unpaid for, no matter what the original terms of issue were.

It is alleged that the stockholders have obtained full-paid, nonassessable stock by paying a trifle in cash and agreeing to pay the entire balance in patents, and that the patents have not been delivered to the corporation.

Whether or not, by reason of such failure to deliver the patents, that portion of the stock which the patents were to pay for remains unpaid, is a question of law to be settled when the report from a master on the facts comes in.

I find nothing relevant to the present situation in Babbit v. Read et al. (C. C.) 173 Fed. 712, except an expression of opinion that a plenary suit can be brought in the New York jurisdiction without a specific levy of assessment upon the stock in the court having jurisdiction over the bankrupt. There is no ruling that the latter forum was without power to make such a levy, and my respect for Judge Ward is so great that I cannot suspect him of harboring such a thought, with Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, In re Remington, 153 Fed. 345, 82 C. C. A. 421, and Munger Vehicle Tire Co., 168 Fed. 910, 94 C. C. A. 314, lying open on the desk before him.

The prayer of the petition will be granted.

The court has notions of its own about the proper person to act as master, but will be pleased to receive suggestions from the parties interested on that subject, if they desire to make them.