In re MONARCH CORPORATION.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 122.

1. CORPORATIONS (§ 230*)—ISSUANCE OF STOCK FOR PROPERTY—FAILURE TO TRANSFER PROPERTY.

Stock issued by a corporation, in consideration of the transfer to it of certain patents having nine. years to run, where the patents were not assigned, cannot be considered fully paid by the assignment of an option to purchase one of such patents for a price named, and also an exclusive license thereunder for two years.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 877; Dec. Dig. § 230.*]

2. CORPORATIONS (§ 232*)—LIABILITY OF STOCKHOLDERS—UNPAID SUBSCRIPTIONS—STOCK ISSUED FOR PROPERTY.

Under the Connecticut Corporation Act of 1903 (Pub. Acts 1903, c. 194), which makes every stockholder of a corporation liable for any "balance due" on the stock held by him, and further provides that, if stock shall be issued in payment for property, the directors shall make and sign a statement showing specifically of what the property consists, and that it has an actual value equal to the amount for which it is received, a stockholder, who has received and retained certificates representing full-paid stock in exchange for property, which he has failed to transfer, is liable for the par value of his stock in cash as on an unpaid cash subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 879, 880, 883, 884, 987; Dec. Dig. § 232.*]

Appeal from the District Court of the United States for the District of Connecticut; James P. Platt, Judge.

In the matter of the Monarch Corporation, bankrupt. Norman Leeds, trustee, appeals from an order of the District Court dismissing the petition of the trustee of the bankrupt, a Connecticut corporation, for an assessment on unpaid capital stock of the corporation issued to and standing in the names of the several stockholders named in the petition. Reversed.

For opinion below, see 196 Fed. 252.

D. S. Day, of Bridgeport, Conn. (R. S. Nichols, of New York City, of counsel), for appellant.

Martin Conboy, of New York City, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER. CURIAM. The Connecticut Corporation Act (Pub. Acts 1903, c. 194, § 16) provides that:

"Every stockholder, whether an original subscriber or not shall be liable for any balance due on the stock held by him. If a corporation be placed in the hands of a receiver or a trustee in bankruptcy, such receiver or trustee shall have the powers of the board of directors in calling for installments on stock," etc.

This proceeding is brought under this section; the only question to be decided by it is whether an installment shall be called. Whatever defenses individual stockholders may have against the claims for pay-

ment of installments called for on their individual shares will come up for consideration when future proceedings may be instituted to recover such installments from them. That a statute like the one above quoted gives a bankruptcy court jurisdiction to decide the questions presented on this proceeding was held by this court in Matter of Remington Automobile Company, 153 Fed. 345, 82 C. C. A. 421.

The trustee contends that it will be necessary to provide nearly $80,-000 to pay debts and expenses, and that an installment of $20 on each unpaid share of stock should be called for. The special master so found, but the District Court having decided to reject the report for reasons which had nothing to do with the amount to be raised, nor the extent of the installment, it did not consider that branch of the case. Since these questions have not been considered by the District Court in the first instance, we shall not discuss them here.

The total amount of authorized capital stock was $500,000. Of this $25,000 was subscribed and paid for in cash. The remaining $475,000 was subscribed for, to be paid by the delivery of property other than cash. This property consisted of two certain patents of the United States relating to the use of carbonic acid gas. At the first meeting of stockholders (January 13, 1906) a resolution was adopted declaring that these patents were in their judgment of the reasonable value of $475,000. At the directors' meeting a similar resolution was adopted.

Neither of these patents was ever assigned to the corporation, indeed neither of them was ever assigned by their owners to the persons who had subscribed for the $475,000 shares of stock. These persons, however, did transfer to the corporation an option which they held from the owner to purchase one of these patents for $20,000, on which option $2,000 had been paid. The option included a license to manufacture and sell under the patent for two years.

It is contended by respondents that these 4,750 shares were never issued. The record does not sustain this contention. Certificates of stock (common and preferred) in the usual form of such certificates covering the entire 5,000 shares (including those paid for in cash) were executed, removed from the stockbook, and handed over to five different individuals, or their representatives. One of the subscribers received certificates which stood in the names of two of the others, under an agreement that he would hold their shares with which to raise the $18,000 necessary to pay the balance due under the option. But these certificates were actually issued by the corporation, were issued as full-paid nonassessable stock, so that they or part of them could be sold to raise that money.

[1] The District Judge held that the property actually turned over was the full equivalent of that agreed to be turned over, and that therefore the 4,750 shares of stock were in fact full-paid. We are unable to concur in this conclusion. The full ownership of two patents is something materially different from the ownership of a contract which gave the holder the right to buy one of the patents for $18,000, with an exclusive license to manufacture, sell, and use under that patent only during the continuance of the option, *two years;* the patent not expiring until 1915. Moreover, there is nothing to show that under section 12 of the Connecticut statute the board of directors ever signed

a statement, or ever even voted, that "the option" had an actual value equal to $475,000.

[2] The main contention of the respondents is that, where the specific property which has been valued and is to be transferred for stock has not been in fact turned over, there can be no cash installment called for. They insist that the "balance due" from the stockholder necessarily depends upon the terms of the subscription contract. This last proposition may be conceded. The argument, briefly stated, is as follows:

Subscriptions to pay in cash are payable only in cash; subscriptions to pay in property generally—in coal or flour, etc.—are payable in property primarily, but on default are payable in cash. In such cases, the agreement is to pay in money or in money's worth. But it is contended that if a subscription is payable in some specific property, such as a parcel of land, a patent, or what not, it does not, upon default, become payable in money; that the subscribers cannot say, in this case:

"It is inconvenient for us to give you the patents; but here is $475,000, their value in money. Take it, and give us the stock."

Under this theory they say that the "unpaid balance" is not a sum of money, but the specific property which was not turned over. We do not need to discuss the authorities cited in support of this proposition generally, nor to express our opinion upon it, because the state of Connecticut has legislated upon this subject, and the nature of the contract of subscription, or of the contract entered into by purchase and holding of stock, is to be determined in the light of that legislation.

The statute provides that the certificate of incorporation must state the par value of a share. Section 63. Section 12 provides for the issue of certificates of stock, but no stock certificate—technically so called—shall be issued until the stock covered by such certificate has been subscribed *and paid in full*. In cases of part payment, receipts (the holding of which receipts makes the holders stockholders) are to be issued, which must state the amount paid and the number of full-paid shares of the receipt holder will be entitled to upon payment of the balance stated to be due. Section 69 provides that the certificate of organization shall state—

"the amount of each class of stock; the amount paid thereon in cash; the amount paid thereon in property other than cash; the amount paid on each share of its stock which is not paid in full."

While the statute contemplates that some shares may be paid for in stock and some shares paid for in property, the peremptory opening sentence of section 12:

"No corporation shall issue any certificates for stock until the stock has been * * * paid for in full"

—seems to us the full equivalent of section 55 in the Stock Corporation Law of New York (Consol. Laws 1909, c. 59), which provides:

"No corporation shall issue * * * stock * * * except for money, labor done, or property actually received," etc.

Respondents concede that the New York courts construe its statute as requiring a default in the transfer of specific valued property to be made good in money.

The provisions as to valuation of property transferred for stock are found in the latter part of section 12 of the Connecticut statute, as follows:

"If any stock shall be paid for otherwise than in cash, a majority of the directors shall make and sign upon the record book of the corporation a statement showing particularly of what *the property* received in payment for stock subscriptions consists, and that it has an actual value equal *to the amount for which it is so received.* The judgment of the directors as to the value of property accepted in payment of stock shall be final; but the directors concurring in the judgment of such value, in case of fraud in the overvaluation of such property, shall be jointly and severally liable to the corporation for the amount of the difference between the actual value of any property so accepted in payment at the time of such acceptance, and the amount for which it is received in payment. The secretary shall keep a record of the names of the directors concurring in such judgment of value."

We construe this Connecticut statute as providing that if a prospective stockholder wishes to pay in property, instead of cash, and the corporation assents to such method of payment, he may do so by having his property valued at some specific sum by the directors, and using such valued property, instead of cash, to pay the full value of the stock which is issued to him. But if, after thus getting his property made a legal tender for the stock, he does not use that legal tender to pay for it—either because he changes his mind about parting with the property, or because he cannot get the legal title to it—and does not repudiate his proposed arrangement, saying, "I cannot give the property and therefore will not take the stock," but on the contrary does take stock certificates to all appearances representing full-paid stock, he must make good what he has not paid in the only available legal tender.

We are referred to no Connecticut decisions which would require a different construction of the statute.

The conclusion we have reached on this fundamental question makes it unnecessary to discuss propositions as to the liability of the directors and other matters which are presented on the briefs.

The order is reversed, and cause remanded, with instructions to proceed in accordance with the views expressed in this opinion.