### In re CANISTER CO.

#### BARNITT v. MAXWELL et al.

(Circuit Court of Appeals, Third Circuit. July 20, 1918.)

No. 2374.

1. BANKRUPTCY ⬥⟶446—PETITION TO REVISE—SCOPE.
On petition to revise an order dismissing a petition to assess the stockholders of a bankrupt corporation, the appellate court is confined to questions of law.

2. BANKRUPTCY ⬥⟶250(1)—CORPORATIONS—ASSESSMENT OF STOCKHOLDERS.
An order of the referee in bankruptcy levying an assessment of 100 per cent. on all stockholders cannot be supported, where the bankrupt cor-

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

poration was the owner of much valuable property, and the referee made no finding as to the proportion to which each share was liable to assessment, for that responsibility cannot be shifted to successive juries.

Petition for Revision of Proceedings of the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

In the matter of the Canister Company, bankrupt. An order of the referee, assessing stockholders of the bankrupt company, was reversed on petition of Henry D. Maxwell and others (248 Fed. 587), and Marshall A. Barnitt, trustee, petitions to revise. Affirmed.

Geo. M. Shipman, of Belvidere, N. J., and E. L. Katzenbach, of Trenton, N. J., for petitioner.

Henry D. Maxwell, of Easton, Pa., and Malcolm G. Buchanan, of Trenton, N. J., for respondents.

Joseph A. Seidman, of New York City, for unsecured creditors.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The Canister Company, a New Jersey corporation, was adjudged bankrupt in July, 1916, and in the following March a creditor (joined afterward by the trustee) petitioned the referee for an order assessing the stockholders, both common and preferred, for the payment of the bankrupt's debts. The petition was based on the averment that, although the stock had been issued as fully paid, such payment had not been made in cash, and that "if any property was given for any shares of stock so issued the same was of little or no value." An assessment was therefore asked, calling for so much of the par value as was still unpaid.

Some of the preferred stockholders appeared and opposed the petition, and the referee heard a good deal of testimony, finally levying an assessment of 100 per cent. on both classes of stockholders and directing the trustee to collect it. The preferred stockholders applied for a review, and the referee, in certifying the case to the District Court, stated his findings of fact and gave his reasons for the assessment. It was conceded that the stock had been issued, not for cash, but for the property of the Canister Manufacturing Company (the predecessor in business of the bankrupt), which had become insolvent in 1909 and had been reorganized. We need not go into the details of the plan that was then carried through without objection, or (as far as we can see) without being open to successful attack by any person then affected thereby. It is enough to say that the Phillipsburg Investment Company, acting as agent for the creditors and stockholders of the Manufacturing Company, acquired title to all that company's property of every kind, and under section 49 of the New Jersey Corporation Act (2 Comp. St. 1910, p. 1630) used the property as the basis of the stock now in question, which was then issued under that section to the creditors and stockholders of the Manufacturing Company as "fully paid stock and not liable to any further call." The section provides, further, that "in the absence of actual fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive"; and no charge of fraud is now made. After the re-

organization, the bankrupt continued the business for six or seven years, and it does not appear that any objection has heretofore been made to the settlement of the Manufacturing Company's affairs, or to the use that was made of its property as the basis for the bankrupt's stock.

It is evident, therefore, that the referee was called on to determine whether the stock in question had in fact been fully paid, and, if not, for how much the shares were still subject to assessment. What the referee did appears by the following paragraphs from his report:

"I find from the proofs deficiency of assets needed to pay bankrupt's debts of considerably more than $200,000, and that therefore the amount of default in payment for outstanding stock, if it should finally appear to be full par value of any or all of the shares of stock, will be needed to pay the debts of the bankrupt.

"I find that there is substantial doubt about the full payment of any of the stock, and that the weight of evidence, as the proofs now stand, is that some of the shares are only partly paid and some are entirely unpaid.

"I find, also, that it is to be taken that it is in the interest of creditors generally, in the administration of the estate, to make the said order. Authority for jurisdiction to make the order in question is in the case of In re New Foundland Syndicate in its two stages, which, in my judgment, bring it closely to the present controversy. The first is in 28 Am. Bankr. Rep. 119, opinion by Judge Rellstab. The second is in the Circuit Court of Appeals, Second Circuit, February 27, 1917 (Enright v. Heckscher, 240 Fed. 863, 153 C. C. A. 549), on appeal from the Southern District of New York of the trial of a plenary suit pursuant to said decision in our own district.   *   *   *

"If it could be found from the proofs that the organization plan was an agreement, and that the various negotiations and transactions were simply carried out under that agreement, there is still the difficult question of the way in which the property turned over for the stock was valued. The appraisal was by Messrs. Darnell, Adams, and Woods, all of them officers of both the buyer and seller companies, as the Canister Manufacturing Company and the Canister Company must be regarded; the Phillipsburg Investment Company being claimed to be only an intermediary. However honestly these gentlemen may have acted, their interests were in the reorganization, and efforts on their part to make values fit is easily attributable to them by the unpreferred creditors, especially in view of the speculative nature of much that they appraised, to wit, patents, good will, patterns, and special machinery adaptable only to particular work. Holcombe v. Trenton White City Co., 80 N. J. Eq. 122, 82 Atl. 618.

"I am therefore constrained by the present proofs to find that there is very considerable doubt concerning the payment in full of all the capital stock outstanding. It is true undoubtedly that property did go over from the Canister Manufacturing Company to the Canister Company, and that it is payment on stock, but to what extent and on what shares it applies cannot be determined by the present proofs. In my judgment that can only be determined by the trustee bringing a plenary suit against a stockholder in which the issues can be narrowed down to his particular dealings which resulted in his holding the stock. Perhaps a number of such suits may be necessary.

"There remains only the question of economic administration. I am relieved from deciding this question by the insistment of the unsecured creditors themselves that the plenary suits be brought. I gave due notice to all creditors of a meeting at which this very question would, among others, be considered. At that meeting, May 18, 1917, as will appear from the records thereof, there was a large attendance and every secured creditor was called upon for his vote. The vote to assume the risk of loss from such suits was virtually unanimous. The only creditor who voted 'no' was one who also represented a number of partially secured creditors. The claims represented in this vote constituted a very large majority of the unsecured claims.

"It is therefore to be remembered again that the situation called upon me to determine, not whether the stock is fully paid, but whether the unpreferred creditors who are most insistent, should be allowed plenary suits to fully investigate the manner of payment for the stock. I found that, they being willing to stand the expense, the right to plenary suits cannot be reasonably denied them, and therefore made the order reviewed."

His order assessed all the stock "to an amount equal to the par value of the stock issued to and held by said stockholders."

When this order came before the District Court, Judge Davis pointed out its deficiencies (248 Fed. 587), and thereupon made an order sending the case back,

"to the end that such further evidence as may be necessary and available be produced and taken by said trustee before said referee, to enable the said referee to ascertain, determine, and find the necessary facts to support an order of assessment against the holders (or some of them) of the capital stock of the said bankrupt, to wit: That the assets of the bankrupt are insufficient to pay its debts and the expenses of administration; the approximate amount of such deficiency; that the shares of the capital stock of the said bankrupt, or some of them, were not paid for in full; which of such shares of stock have not been paid for in full, and the amount of such deficiency of payment in respect of each; the respective holders of such shares as have not been fully paid, and which of them had, or are chargeable with, knowledge of the fact of such deficiency of payment, in their acquirement of said stock; the pro rata share required to be paid by such holders in order to liquidate the indebtedness of the bankrupt and pay the expense of administration.

"And it is further ordered, adjudged, and decreed that if the evidence heretofore, or hereafter to be, produced before said referee, be insufficient to enable him to make such findings of fact as aforesaid, the referee shall dismiss the petition for the assessment of stockholders."

[1, 2] This is the order that we were originally asked to revise, and it is so plainly interlocutory that during the argument we were on the point of dismissing the proceeding before us as premature. Thereupon counsel acquiesced in the correctness of this position, but urged that to send the case again to the referee would be useless, because they had no more evidence to offer on either side; and, in order to dispose of the controversy, they stipulated that the interlocutory order complained of should "be deemed for all purposes, both in this court and in the court below, a final decree of said District Court dismissing so far as respects the preferred stockholders the petition originally filed with the referee, * * * praying for an order of assessment against the stockholders of said Canister Company." What is before us now, therefore, is a proceeding to revise an order dismissing the petition to assess, and, as this confines us to questions of law (Hall v. Reynolds [C. C. A. 8] 224 Fed. 103, 139 C. C. A. 659; Gaudette v. Graham [C. C. A. 9] 164 Fed. 312, 90 C. C. A. 243; Ross v. Stroh [C. C. A. 3] 165 Fed. 630, 91 C. C. A. 616; Collier [11th Ed.] 581, and cases cited), the precise point is whether the dismissal was right or wrong on the facts reported by the referee and accepted by the District Court. This being the point, we see no error in the order to dismiss. The facts found by the referee were not sufficient to support an assessment of 100 per cent. upon the stock. Unquestionably the stock had a large amount of valuable property behind it, and much of the

evidence related to this subject, although it did not enable the referee to reach a satisfactory conclusion. No doubt, for this reason, he did not find the ultimate fact, what proportion of each share was liable to assessment, or the subsidiary facts that might support such a finding; and we cannot agree that in place of such findings he could substitute an assessment of the largest amount that could possibly be called, and thereby shift to successive juries the burden of deciding separately, and probably with varying results as the evidence might vary, the correct amount with which each stockholder should be charged. If Babbitt v. Read, in the Circuit Court of New York (173 Fed. 712, 23 Am. Bankr. Rep. 256), decides such an assessment to be proper, we must decline to follow that decision, referring in support of our refusal to In re Remington Co., 153 Fed. 345, 82 C. C. A. 421, a ruling to the contrary by the Circuit Court of Appeals of the same circuit. See, also, In re New Foundland Syndicate (C. C. A. 3) 201 Fed. 917, 120 C. C. A. 255.

As the facts found by the referee were insufficient to support the assessment, the order dismissing the petition was correct, and is now affirmed.

