**Lincoln Payne, Trustee, etc., Defendant in Error, v. Louis F. Stuebe et al. Louis F. Stuebe, Plaintiff in Error.**

1. APPEAL AND ERROR, § 855*—*when certificate of evidence unnecessary.* When a cause is heard on the pleadings with a report of evidence made by a master without any evidence being heard in court, a certificate of evidence is not required.

2. BANKRUPTCY, § 38*—*when trustee of insolvent corporation may maintain action against stockholders on unpaid stock subscriptions.* The trustee in bankruptcy of an insolvent corporation represents the creditors to the extent that he may sue stockholders to make them respond on their liability, under section 8 of the Corporation Act of Illinois (J. & A. ¶ 2425), on the amount remaining due and unpaid on capital stock of which they were the owners.

Error to the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. , Heard in this court at the April term, 1918. Affirmed. Opinion filed October 22, 1918.

**Statement by the Court.** Lincoln Payne, complainant, as trustee in bankruptcy of the News Printing Company, filed this bill in equity in the Circuit Court of Vermilion county to the October term, 1914, against .Louis F. Stuebe, Minna Stuebe and F. A.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXII 38

Baumgart. The bill alleges that in March, 1914, the News Printing Company was on its petition adjudged a bankrupt; that the News Printing Company is a corporation organized in January, 1907, under the laws of the State of Illinois, with a capital stock of 600 shares of the par value of $100 per share; that in January, 1908, and in March, 1909, Louis F. Stuebe became the owner and assignee of 598 shares of the stock of the corporation, and Minna B. Stuebe and F. A. Baumgart each became the nominal owner of one share, the equitable title of which was in Louis F. Stuebe; that in March, 1909, the number of shares of stock was increased to 1,200 and the par value reduced to $50 per share, and a new certificate for 1,196 shares was issued to Louis F. Stuebe, and Minna B. Stuebe and F. A. Baumgart each received 2 new shares; that neither the original subscribers nor any of the assignees nor assignors ever paid to exceed 50 per cent of the amount of the par value of the stock, and there has always remained unpaid to the corporation at least 50 per cent of the par value of the stock, and none of the assignments and transfers of stock were ever recorded in the office of the recorder of deeds in the county of Vermilion, where the principal office of the corporation was located; that at the time of the adjudication in bankruptcy the corporation had assets not to exceed $1,000, and debts to the amount $4,000 were proved against the corporation before the referee in bankruptcy. The bill also alleges the statute of Illinois in reference to the liability of stockholders and assignees of capital stock of corporations.

The bill further alleges that in June, 1912, the News Printing Company executed to Louis F. Stuebe a chattel mortgage, which was duly recorded, to secure a promissory note of $5,000, dated September 18, 1909, due 3 years after date, signed by Amos W. Bishop, Fred Royalty and Fred Phillips, payable to Louis F. Stuebe, on certain described property of the corpora-

tion; that there was no consideration to the News Printing Company for said transaction, and the indebtedness secured was the indebtedness of Bishop, Royalty and Phillips for a balance due for capital stock in the corporation sold by Stuebe to them at the time the note was executed; that on September 5, 1912, Stuebe procured said News Printing Company to execute a new chattel mortgage securing a note of $5,881.30, which note was a renewal of the note and indebtedness of Bishop, Royalty and Phillips, all of which was known to Stuebe; that about March 1, 1914, a few days before the filing of the petition in voluntary bankruptcy by the News Printing Company, Stuebe foreclosed said mortgage and bought the property mortgaged, which was of the value of $10,000, and converted the same to his own use, when there were creditors of the corporation having claims amounting to $4,000 who have proved their claims before the referee. It also alleges that the said mortgages are voidable and without consideration, and that Stuebe holds said mortgaged property for the benefit of the creditors of the corporation. The prayer of the bill is that Stuebe be decreed to be liable to the complainant for the debts of the corporation to the extent of the amount unpaid on the stock of which he was the assignee, and also to the extent of the value of the property received and converted by him under the chattel mortgage.

The defendants answered denying any liability and setting up a contract dated September 17, 1909, under which Stuebe and the printing company sold certain chattel property and 1,196 shares of the capital stock of the corporation to Bishop and his associates for which the purchasers' notes were taken, secured by a chattel mortgage executed by the purchasers, and a bill of sale by Bishop and associates in September 18, 1909, to the News Printing Company of the same chattel property, subject to the mortgage to Stuebe, and a chattel mortgage executed in June, 1912,

by the News Printing Company to Stuebe in renewal of the notes of Bishop and others to Stuebe and certain renewals thereof. A special master in chancery made a report of the evidence taken by him, with his conclusions, but the record does not contain any order of reference.

The findings of the master are that there had only been $30,500 paid by the stockholders on the $60,000 of capital stock, and that the creditors of the corporation had a right to resort to the amount remaining unpaid as a fund to satisfy their debts, and that the chattel mortgage given to Stuebe by the corporation was to secure a debt of Bishop, Royalty and Phillips and not an indebtedness of the corporation.

The court found that there was a deficiency of $2,857 in the assets of the corporation to pay its debts proved before the referee; that Stuebe was the real owner of all the stock of the corporation; that there remained unpaid to the corporation 50 per cent of the amount due on its capital stock; that none of the transfers were recorded, and that Stuebe was as assignee liable for the unpaid subscription to the capital stock, which is half of its par value. The court also found that the chattel mortgages executed by the corporation were without consideration, and were given to secure the indebtedness of Bishop and associates on their purchase of capital stock in the corporation, and were voidable by the trustee in bankruptcy, and that Stuebe, by foreclosing the chattel mortgage, had appropriated wrongfully the property mortgaged, which was of the value of $10,000, and entered a decree that the trustee recover from Stuebe $2,857, the amount due to creditors and costs. The defendant Stuebe prosecutes this writ of error.

CHARLES G. TAYLOR, for plaintiff in error.

REARICK & MEEKS, for defendant in error; A. Q. REYNOLDS, of counsel.

PER CURIAM.

Plaintiff in error has assigned for error, (1) that "The court erred in sustaining the special master's findings, and in holding that complainant was entitled to the relief prayed"; (2) that "The court erred in overruling the defendant's objections, and in sustaining the special master's findings in his conclusions of law"; and (3) that "The court erred in overruling the defendant's objections to the special master not finding that the bill of complaint herein should be dismissed for want of equity."

Defendant in error contends that the errors assigned are not properly before this court for review because there is no certificate of evidence. When a cause is heard on the pleadings with a report of evidence made by a master without any evidence being heard in court, a certificate of evidence is not required. *Ferris v. McClure,* 40 Ill. 99; *Barnes v. Earle,* 275 Ill. 381.

The record does not contain any order of reference of the cause either to a special master or to the regular master, although it does contain a report to the court purporting to be made by A. R. Hall, special master in chancery, of the evidence with his conclusions. The report of the evidence recites that the defendant in error offered in evidence, as an exhibit, the charter of the News Printing Company issued by the Secretary of State, and the minutes of stockholders' meetings held on December 10, 1906, and January 22, 1908; it also recites the offering in evidence of various leases, certificates of stock, bills of sale, chattel mortgages, notes and other documentary evidence, some of which were introduced by the defendant in error and others by plaintiff in error, none of which, however, are incorporated in the master's report. The record does not contain any exceptions to the report of the master nor any order that the objections shall be permitted to stand as exceptions.

Counsel for plaintiff in error in his argument contends that a trustee in bankruptcy, the defendant in error, is the representative of the corporation and not of its creditors, and hence insists that the trustee has no right to file this bill against the stockholders to make them respond on their liability under section 8 of the Corporation Act of Illinois (J. & A. ¶ 2425) on the amount remaining due and unpaid on capital stock of which they were the owners.

"Unpaid stock subscriptions in a bankruptcy corporation pass to the trustee. * * * And its trustee in bankruptcy may maintain suit for the same in the State court." (Remington on Bankruptcy, sec. 976.) "A bankrupt's liability for his unpaid stock subscription also is a provable debt." (Remington on Bankruptcy, sec. 709.) "But where the corporation has no right to enforce the liability, its trustee in bankruptcy has none." While some textbooks lay down the rule that the bankruptcy court has jurisdiction in the bankruptcy proceedings themselves to make the assessment which is stated to be a prerequisite to the institution of suits to collect the unpaid stock subscriptions, an examination of the authorities cited for such rule will disclose the fact that such an assessment has been held to be a prerequisite only to suits at law against the several stockholders, and the rule is laid down in *Sawyer v. Hoag,* 17 Wall. (U. S.) 610, and *Burke v. Smith,* 16 Wall. (U. S.) 390, that in a suit in chancery "the trustee is the proper one to make the call." In *Re Remington Automobile & Motor Co.,* 153 Fed. 345, it was said: "Had the corporation not become bankrupt, it could have laid an assessment upon such of its stockholders as were liable for further calls to make up full payment, and the right to make an assessment and call passed by the bankruptcy to the trustee"; and in *Allen v. Grant,* 14 Am. Bankr. 349, it is said: "The trustee in bankruptcy of an insolvent corporation may sue for the

recovery of unpaid subscriptions," and "a transferee, who takes such shares with knowledge that they have been improperly issued as fully paid up becomes liable for the unpaid subscription. * * * This liability can be enforced by the trustee in bankruptcy. For while he represents the corporation in a sense, he also represents the creditors." Trustees are appointed by the creditors under the Bankruptcy Act of 1898, and it is their duty to collect and reduce to money the property of the estate of which they are trustees, and it was said in *Sanger v. Upton,* 91 U. S. 56: "As regards creditors, there is no distinction between such a demand [the personal liability on unpaid stock] and any other assets which may form a part of the property and effects of the corporation." Counsel for plaintiff in error has cited some Illinois authorities, the holding of which is that an assignee for the benefit of creditors represents the insolvent and not the creditors, and he cannot set aside fraudulent conveyances because the insolvent could not avoid his own fraudulent acts. These authorities are not in point and not controlling in bankruptcy proceedings for the reason that the amendments of 1903 and 1910 to section 70 E of the Bankruptcy Act conferred on a trustee in bankruptcy the right to recover property which had been transferred in fraud of creditors.

This suit is a suit in equity. The trial court found the amount of the deficiency of assets to pay claims allowed against the bankrupt to be $2,857. It also found that the stock of the corporation consisted of 600 shares, of which plaintiff in error was the owner of 598 shares of the par value of $100 each, and the equitable owner of the share of stock issued in the name of Minna Stuebe and the share in F. A. Baumgart, of which they were only the nominal owners, and that when the number of shares of stock were doubled and the value reduced to $50 per share, plaintiff in error had issued to himself 1,196 shares and 2 shares

to each of the other holders, but of which he was the equitable owner, and that not to exceed 50 per cent of the par value of the stock had ever been paid thereon, and that none of the assignments and transfers of stock had been recorded in Vermilion county, the location of the principal office of the corporation.

The plaintiff in error being the owner of all the capital stock and liable for one-half the face value thereof, the court did not err in rendering a decree against him for $2,857, the amount of the deficiency and costs.

The plaintiff in error being liable on his holding of stock, it is unnecessary to review the question of liability for the value of property taken on chattel mortgage which is alleged to have been void.

The decree is affirmed.

*Affirmed.*