## JOHNSON v. LOUISVILLE TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1923.)

### No. 3,870.

1. **Bankruptcy ⚥439—Petition for review proper method to review decree dismissing trustee's petition for assessment of stockholders.**

   A petition for review, under Bankruptcy Act, § 24b (Comp. St. § 9608), is a proper method to secure a review of a decree of the District Court, affirming an order of the referee dismissing trustee's petition for assessment of stockholders of a bankrupt corporation.

2. **Corporations ⚥216—Liability of stockholders for unpaid subscriptions depends an law of state of incorporation.**

   The liability of stockholders of a Delaware corporation for alleged unpaid subscriptions depends on the law of that state.

3. **Bankruptcy ⚥145(2)—Trustee has right of action against delinquent stock subscribers.**

   The right of action, if any, against the stockholders of a bankrupt Delaware corporation for alleged unpaid subscriptions, is in the trustee.

4. **Corporations ⚥232(2)—Parties giving property for preferred stock not liable to trustee in bankruptcy.**

   Where preferred stock was issued in payment of realty and other assets, bought at what was under then existing conditions a reasonable price, the fair value of which was unanimously agreed on, there was no fraud or concealment, more than the agreed cash for operating expenses was advanced, and the stock proved a total loss, trustee in bankruptcy cannot collect anything from preferred stockholders, under General Corporation Law Del. §§ 14, 20, notwithstanding majority of the stockholders and directors were interested as, or represented, the promoters, who took the benefits of the transaction.

5. **Corporations ⚥228—Holders of no par value stock not liable to trustee in bankruptcy.**

   Where promoters and incorporators of a manufacturing experiment formed a corporation, issuing both preferred stock and stock of no par value, and divided the stock of no par value among themselves, without fixing its value, *held*, that the consideration contemplated by the corporation and its promoters had been paid, and the no par value stock had no tangible value; hence holders thereof are not liable, under General Corporation Law Del. § 20, to trustee in bankruptcy as for unpaid stock.

Petition to Revise an Order of, and Appeal from, the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Proceeding by Claude W. Johnson, trustee in bankruptcy of the Kentucky Iron & Steel Company, bankrupt, against the Louisville Trust Company, trustee, and others. An order of the referee dismissing the petition was affirmed by the District Court, and the trustee seeks review, both by appeal and by petition for revision under Bankruptcy Act, § 24b. Affirmed.

---

⚥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

David R. Castleman, of Louisville, Ky. (Gifford & Steinfeld, of Louisville, Ky., on the brief), for appellant.

Eugene R. Attkisson, of Louisville, Ky. (R. A. McDowell and Pennebaker & Godfroy, all of Louisville, Ky., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The Louisville Trust Company, as trustee for certain individuals, had purchased at bankruptcy sale the plant and assets of the Louisville Steel & Iron Company, the substantial consideration being the cancellation of a bond issue of $200,-000. On April 20, 1920, the trust company, as such trustee, gave respondents Tietjen and J. Walter Bell an option for the purchase of this plant and personal property, to be conveyed to a corporation to be organized by the optionees, and having an authorized issue of $150,-000 of preferred stock and 3,000 shares of no par value common stock, of which the trust company, as such trustee, was to receive as payment for such plant and personalty $50,000 preferred and 750 shares of no par value common stock, plus $100,000 of an issue of $150,000 of mortgage bonds to be placed on the property by the new corporation, optionees agreeing to put not less than $50,000 of working capital into the treasury of the new corporation, to be used for necessary repairs, alterations, and operation. This option was accepted on or about May 4, 1920. Pursuant to this arrangement, the present bankrupt, the Kentucky Iron & Steel Company, was organized under the laws of Delaware, with authority to issue preferred and no par value common stock in the agreed amounts above stated; the three incorporators, of whom Tietjen was one, subscribing each for 5 shares of such common stock. On the same day the incorporators, acting by proxy, elected five directors, of whom Tietjen was one, and on the same day, at Wilmington, Del., by the affirmative vote of all present, adopted a resolution reciting the option and its acceptance; also an offer by the optionees to sell and assign the option and all rights thereunder to the new corporation, in consideration of the issue to the optionees of 2,250 shares of no par value common stock, and authorizing the board of directors to purchase the option at the price stated and to issue such stock in payment; also to carry out the option according to its terms, and purchase the plant and assets in question, and give a mortgage thereon to secure the bonds before referred to; and to issue in payment for the plant and assets the preferred stock and no par value common stock and mortgage bonds in amounts provided in the option.

On June 1, 1920, at its first meeting (at Louisville), the board of directors (Tietjen not voting) adopted a resolution accepting the offer of the optionees to sell the option, approving the terms thereof, and authorizing the president and secretary to accept and carry it out, to make and deliver all necessary agreements for the purchase of the property, and specifically authorizing and directing those officers to issue to the optionees certificates for the no par value common stock, and to the order of the Louisville Trust Company, trustee, certificates for the no par value common stock and the full-paid and nonassessable preferred stock, and the mortgage bonds in the same amounts as were

provided by the option and by the stockholders' action, said preferred and common stock (full-paid and nonassessable) and bonds to be in full payment for said property, in accordance with the terms of said option; also authorizing the executive committee of the board to borrow on the company's behalf $50,000 and to pledge as collateral security for the payment thereof the remaining $50,000 of the company's first mortgage bonds. The president and secretary were later authorized by the executive committee to execute and deliver the notes and agreement on consideration of the payment of such $50,000. The trust company received and retained the certificates for both classes of stock. The certificates for the 2,250 shares of no par value common stock were issued to Tietjen, and by him indorsed and delivered to respondent J. Walter Bell, who continued to hold or control them. A considerable sum was expended in altering or rebuilding the plant and putting it into operable condition, and for several months the transaction of business by the new company was attempted; but on January 19, 1921, it was adjudged bankrupt.

Meanwhile, J. Walter Bell had advanced $50,000 to the new company for the purposes stated in the option agreement, and had taken as security therefor the remaining $50,000 of mortgage bonds, which he claims to have sold to his wife, the respondent Phyllis W. Bell. J. Walter Bell also claims to have advanced to the bankrupt a further sum of $65,153.22, the claim wherefor he assigned to the respondent Ira L. McCord. At bankruptcy sale the trust company bid in the entire of the bankrupt's property, paying into court the stipulated value of the free assets, so leaving available for distribution to general or unsecured creditors (amounting to approximately $220,000, including the deficiency mortgage claim of the trust company) not more than $7,-000, after payment of wage claims, expenses of administration, and other priorities. Thereupon this proceeding was instituted by the trustee in bankruptcy for the recovery from the trust company, trustee, as for unpaid stock, of $50,000 on account of the preferred and $75,-000 on account of the no par value common stock, and from Tietjen and J. Walter Bell, jointly and severally, for common stock liability, $225,000. Payment upon the claims of Ira L. McCord and Mrs. Bell was sought to be stayed pending the hearing of the main issues. After hearing upon the merits, the referee denied and dismissed the petition for assessment of stockholders' liability as to both preferred and no par value stock. Upon review the District Court affirmed the referee's order. The trustee in bankruptcy seeks review of the action of the District Court both by appeal and by revision under section 24b of the Bankruptcy Act (Comp. St. § 9608).

[1] 1. *The Method of Review.*—The result of the case will be the same, whether review is had by appeal or on petition to revise. We are disposed to regard the latter method as proper. It is the method under which review was had by this court in Re Associated Oil Company (C. C. A.) 289 Fed. 693, and in Re Pipe Line Oil Company, 289 Fed. 698.

[2, 3] 2. The liability of the stockholders of this Delaware corporation for alleged unpaid subscriptions depends upon the law of that state.

Kiskadden v. Steinle (C. C. A. 6) 203 Fed. 375, 378, 121 C. C. A. 559; Courtney v. Croxton (C. C. A. 6) 239 Fed. 247, 152 C. C. A. 235. The right of action, if any, is in the bankruptcy trustee. Cooney v. Arlington Hotel, 11 Del. Ch. 286, 101 Atl. 879; s. c. 11 Ded. Ch. 430, 106 Atl. 39; In re Pipe Line Oil Co. (C. C. A. 6) 289 Fed. 698.

[4] The question of the trust company's liability on account of the preferred stock presents little difficulty. Section 14 of the General Corporation Law of Delaware provides that subscriptions to or purchases of the capital stock of any corporation organized under any law of that state may be paid for wholly or partly by cash, by labor done, by personal property, or by real property or leases thereof, and provides that:

"The stock so issued shall be declared and taken to be full paid stock and not liable to any further call, nor shall the holder thereof be liable for any further payments under the provisions of" its charter, "and in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases, shall be conclusive." Rev. Code Del. 1915, § 1928.

Section 20 (Rev. Code Del. 1915, § 1934) declares that in case of corporate insolvency, and when the whole capital stock shall not have been paid in, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of the par value of such share as fixed by the company's charter or certificate of incorporation, or such proportion of the same as shall be required to satisfy the debts of the company.

3. *The preferred stock* in question was issued in part payment of the purchase price of the real estate and other assets, for the use of the new corporation. It was declared to be fully paid. The incorporators unanimously declared the property necessary for the business of the corporation, that its fair value was more than $150,000, and in express terms authorized the board of directors to carry out the option according to its terms, and purchase the property, to issue the common and preferred stock as provided therein in payment, to execute the mortgage in question, and to deliver to the trust company, trustee, the certificates for the two classes of stock and for the bonds in the amount previously provided for. The referee found that this valuation was "reached by real investigation and examination by a majority of the board," that there was "no fraud in fixing it at that figure," and that "under the conditions existing at the time it was not unreasonable." We accept these conclusions of the referee, which we think amply supported by the record.

The testimony, considered as a whole, including an appraisal made by an appraisal company of apparent standing, justifies the conclusion that the purchase was made when there was a large demand for iron and steel products, and that the failure was due to a marked decline in the market from the time the new company began to operate until the time it went into bankruptcy.

The only contention of the trustee in bankruptcy which we think requires notice, as applicable to the trust company's asserted liability on account of the preferred stock, is that the action of the stockholders and directors was a nullity, for the reason that the majority of both

stockholders and directors were interested as or represented the promoters who took the benefits of the transaction. Conceding, for the purposes of this opinion, that such would be the result in case of fraud, concealment, or misrepresentation, coupled with mere majority action, or as against new stockholders,[1] such rule would scarcely seem applicable where, as here, there is, as found by the referee, an absence of fraud, misrepresentation, or concealment, where everything was open, where all interested parties concurred, where the corporate action merely carried out the previously existing agreement, where not only the agreed advancement of cash for operating purposes, etc., was made, but even an amount in excess thereof, where no new stockholders' rights have intervened, and where nothing seems to have been done to mislead or deceive prospective creditors.[2] Moreover, if, as found by the referee, the price of $150,000 for the plant and personalty was not unreasonable, the trustee in bankruptcy could scarcely expect to recover on account of the preferred stock, which indeed proved a total loss.

[5] 4. *The Common Stock.*—Section 20 of the Delaware statute, already referred to in part, further declares that in the case of stock without par value, this liability (for unpaid portion of part-paid stock) shall be limited to the unpaid balance of the consideration for which the stock was issued by the corporation. As to the 750 shares of no par value common stock issued to the trust company, trustee, the referee thought that no consideration therefor was fixed by the board of directors; that stock was simply "thrown in" with the securities which had an ascertainable value, and therefore the 750 shares issued to the trust company, trustee, were void.

As to the shares issued to Bell and Tietjen, the directors expressly "adjudged and declared that said option is worth 2,250 shares of common stock of this company, without nominal or par value." The referee thought that a consideration was thus found by the board in the value of the option taken over by the bankrupt, saying that, "while the option finally proved to be worthless, so did the common stock." We find it unnecessary to consider whether the referee correctly treated the 750 shares as void,[3] nor whether, as contended by the trustee in bankruptcy, the option failed to furnish a lawful consideration for the issue of stock under the Delaware constitution, as being neither cash, labor, personal property, real property, nor leases thereof.

In ultimate legal effect, the promoters and incorporators determined

[1] Cf. Yeiser v. U. S. Board & Paper Co. (C. C. A. 6) 107 Fed. 340, 46 C. C. A. 567, 52 L. R. A. 724; Davis v. Las Ovas Co., 227 U. S. 80, 33 Sup. Ct. 197, 57 L. Ed. 426; Amer. Shipbuilding Co. v. Commonwealth S. S. Co. (C. C. A. 6) 215 Fed. 296, 131 C. C. A. 596; Enright v. Heckscher (C. C. A. 2) 240 Fed. 863, 153 C. C. A. 549.

[2] Cf. Old Dominion Copper Co. v. Lewisohn, 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025; Anderson v. Avey (C. C. A. 9) 272 Fed. 664; 7 Ruling Case Law, tit. "Corporations," § 53, p. 74.

[3] Cf. Anderson v. Mining Syndicate, 26 S. D. 558, 128 N. W. 1016; Walton v. Standard Co., 43 S. D. 576, 181 N. W. 96; Northwest Mfg. Co. v. French, 44 S. D. 195, 183 N. W. 117; cited in the opinion of this court in Re Associated Oil Co., supra, 289 Fed. at page 697.

that, if this manufacturing experiment succeeded, those organizing it and contributing to its success were entitled to share the net earnings (above dividends on preferred stock), and, in case of corporate dissolution, the net assets remaining after payment of debts, in the proportions represented by the respective amounts of the no par value stock given. If it be thought that the corporate action, considered in its entirety, failed to declare "the consideration for which the stock was issued by the corporation," or that such consideration was extralegal, what is the result? We find no warrant whatever for the contention of the trustee in bankruptcy that he thereby became entitled to recover from those engaged in this unsuccessful experiment such an amount as may be found necessary to meet the payment of creditors' claims and the expenses of bankruptcy administration. State legislation providing for no par value stock was inaugurated more than 10 years ago. Numerous states have since made similar provision. The wisdom of this legislation is not before us, although we are not to be understood as discrediting it. Indeed, very many competent jurists and financiers regard the evils of no par value stock less than those frequently incident to the issue and sale of stock having a par value. In at least three states, Delaware corporations having stock with no par value have been held qualified to do business. Petroleum Co. v. State Charter Board, 105 Kan. 161, 181 Pac. 625; State v. Sullivan, 282 Mo. 261, 221 S. W. 728; Detroit Corporation v. Secretary of State, 211 Mich. 320, 178 N. W. 697, 182 N. W. 526.

We are cited to no authority, nor have we found any, supporting the right to the recovery asserted by the trustee in bankruptcy. On the contrary, the generally, if not universally, accepted theory of the purpose of such statutes is that they are intended to do away with both the "trust fund" and "holding out" doctrines. We refer in the margin to three valuable and interesting articles in the American Bar Association Journal upon the subject of no par value stock.[4] As Mr. Cook says:

"The whole theory of stock without par value is 'let the buyer beware' and 'let the creditor beware.'"

Granting that the courts should compel the payment of the consideration for which the no par value stock was issued by the corporation, it would seem, not only that the consideration contemplated by the corporation and its promoters has been paid, but also that the no par value stock had no tangible value.

We have found it unnecessary to consider all of the interesting suggestions and arguments presented.

The decree of the District Court is affirmed.

[4] By Wm. W. Cook, October, 1921; by Messrs. Hollen and Tuthill, November, 1921; by Henry E. Colton, December, 1921.