TRINITY PORTLAND CEMENT CO. et al. v.
NAYLOR et al.

No. 12357.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 4, 1930.

Rehearing Denied Nov. 8, 1930.

$723.09, the balance due on an account for $903.86 for merchandise sold by the plaintiff to the Naylor-Collins Company, a corporation which had been duly incorporated under the laws of the state of Texas. A further recovery was also sought against the defendants for $48,000 for the use and benefit of other general creditors of the same corporation, several of whom filed interventions in the suit, adopted plaintiff's pleadings, and prayed for judgment in their favor on the same facts. But there were other general creditors who did not join in the suit. This appeal has been prosecuted by the plaintiff and the interveners from a judgment sustaining a general demurrer to their pleadings, and dismissing their suits after they had declined to amend.

According to allegations in the pleadings of plaintiff and interveners, which as against a general demurrer must be accepted as true, the following are the facts upon which a claim of liability of the defendants for the debts sought to be collected was based: The defendants Naylor and Collins were original subscribers for capital stock in the Naylor-Collins Company. Defendant Naylor subscribed for $25,000 of stock and paid in only $10,000 on his subscription, leaving an unpaid balance of $15,000. Defendant Collins subscribed for $24,000 of the capital stock and paid in only $200 on his subscription, leaving an unpaid balance of $23,800. Defendant Bailey acquired from defendants Naylor and Collins $10,000 of the capital stock, none of which had been paid for by his assignors, which fact was known to him at the time he acquired the stock.

In answer to proceedings in bankruptcy by creditors of the Naylor-Collins Company, instituted in the District Court of the United States for the Northern District of Texas, that company admitted its bankruptcy and offered a composition settlement of all its debts, aggregating $60,000, by paying 20 per cent. thereof, and on April 29, 1929, a hearing was had on that application and upon acceptance of the offer by a majority of the general creditors in number and amount, the offer was confirmed by that court. Plaintiff and interveners who were general creditors appeared and objected to the composition offer but after it was confirmed they accepted their pro rata parts of the composition payment.

Appellants base their actions upon each of the two following theories:

The first is that under and by virtue of the provisions of our statutes authorizing the formation of private corporations organized for profit, the defendants are liable to the creditors of the Naylor-Collins Company for the unpaid balance of their respective stock subscriptions on which the capital stock held by them was issued, notwithstanding

Otis Nelson, of Wichita Falls, for appellants.

Harris & Martin, DeMontel & Sanford, and Kay & Akin, all of Wichita Falls, for appellees.

DUNKLIN, J.

This suit was instituted by the Trinity Portland Cement Company, a corporation duly incorporated under the laws of the state of Texas, against H. J. Naylor, Arch D. Collins, and C. B. Bailey, to recover a personal judgment in plaintiff's favor against them for

the fact that those subscriptions stipulated for payment to the corporation with no agreement therein that they were made for the benefit of the creditors also.

The second theory advanced is that if a right of recovery is not given by those statutory provisions, nevertheless defendants are liable under the doctrine of what is usually termed and hereafter referred to as the trust fund theory, the purport of which is that when such a corporation becomes insolvent or is discharged in a bankruptcy proceeding, then the unpaid balance of subscriptions for its capital stock becomes a trust fund and the payment thereof to the creditors of the corporation can be enforced by a court of equity in a proceeding instituted for such relief, which is usually termed a creditor's bill.

Appellants' claims under the first theory noted will be discussed first.

The following are provisions of the Revised Civil Statutes of the State of Texas:

Article 1308 provides that before a charter of a private corporation created for profit can be filed by the secretary of state, the full amount of its authorized capital stock must be in good faith subscribed by its stockholders and 50 per cent. thereof paid in cash, or its equivalent in property or in labor done. By article 1335 it is provided that the board of directors of any corporation may require the subscribers for capital stock of the corporation to pay the amount by them subscribed, in such installments as may be provided by the by-laws. And article 1336 confers the power upon the board of directors to declare a forfeiture of stock for nonpayment of any installment due thereon. Article 1337 reads as follows:

"All bodies corporate may sue for, recover and receive from their respective members all arrears or other debts, dues or demands owing to them, in like mode, manner and form as they might sue for, recover and receive the same from any person not a member of their body."

Article 1338 requires the stockholders to pay in any balance due by them for stock, within two years from the date of filing of the charter. Article 1339 confers upon the Secretary of state the power to forfeit the charter for nonpayment of the capital stock within two years after the filing of the charter.

Article 1345 reads as follows:

"If execution has issued against the property of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then the execution may be issued against any of the stockholders to an extent equal to the amount of the stock unpaid. No execution shall issue against any stockholder, except upon an order of the court in which the suit or other proceeding was instituted, made in open court upon motion after a reasonable written notice to the person or persons sought to be charged. Upon such motion, such court may order execution to issue accordingly; or the plaintiff in execution may proceed by action to charge the stockholders with the amount of his judgment, in accordance with the liability of the stockholders."

Article 1395 reads:

"No stockholder shall be liable to pay debts of the corporation beyond the amount unpaid on his stock."

Appellant's asserted rights of action, based on the statutes, in connection with the stock subscriptions, are actions at law, and not suits in equity; and whether or not they are sustainable depends upon the terms of those statutes which are invoked by them and set out above, construed with reference to the stock subscription contracts, which name the corporation as the only payee and therefore do not of themselves import liability to any one except the corporation. Appellants especially stress the provisions of article 1345 as supporting its claims of statutory liability. It is plain that the right there given a creditor of a corporation, to a levy of execution on the property of a stockholder who has failed to pay into the corporation the amount of his stock subscription, does not arise until judgment has already been recovered by the creditor against the corporation and no property belonging to it can be found out of which the judgment may be satisfied. In other words, that right is given to no one but a judgment creditor; and the specific mention of a judgment creditor without giving a similar right to all general creditors whose claims have not been reduced to judgment implies an exclusion of the latter from the benefits of that statute under the rule "inclusio unius est exclusio alterius." To hold otherwise would be to do violence to the most elementary rules of statutory construction.

Article 1345 of the statutes confers a right which is in the nature of a writ of garnishment, and, like the statutes providing for the issuance of such a writ, its requirements must be strictly followed, and only those included in its terms can invoke its aid. 7 R. C. L. p. 384, § 368, and p. 390, § 375.

Furthermore, it is apparent that article 1395 is merely a limitation of the amount of recovery under the provisions of article 1345, and also under the trust fund doctrine, and none of the other articles of the statutes have any proper application to the issue now under discussion.

In support of their claims of right under the trust fund doctrine, appellants have cited

the following provisions of the Bankruptcy Act, Title 11, of the U. S. Code Annotated:

"§ 22. * * * The bankruptcy of a corporation shall not release its officers, directors, or stockholders, as such, from any liability under the laws of a State or Territory or of the United States."

The following are also provisions of the Bankruptcy Act:

Section 30 gives the right to the bankrupt to offer to its creditors terms for a composition ·settlement with creditors and confers upon the judge of the district court jurisdiction to confirm the offer after its acceptance by a majority of the creditors in number and amounts, with the provision that when confirmed and when the consideration for the offer is distributed as the judge shall direct, the case shall be dismissed.

Section 110, paragraph (f), reads:

"Upon the confirmation of a composition offered by a bankrupt, the title to his property shall thereupon revest in him."

Section 34:

"The liability of a person who is the codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Appellant also cites the following from the opinion of the Court of Civil Appeals in Bank of De Soto v. Reed, 50 Tex. Civ. App. 102, 109 S. W. 256, 260:

"Thus the corporation was insolvent from the beginning of its existence. It is now too well settled to require discussion that the amount unpaid on the stock of an insolvent corporation constitutes a trust fund for the benefit of creditors, and that, where the insolvency and nonpayment of subscriptions are undisputed, as in this case, the creditor may sue the stockholders in a direct proceeding without first obtaining a judgment against the corporation, and the return nulla bona of execution. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015."

Also the following from 7 R. C. L. p. 392, § 377:

"Where the required proceedings as to obtaining a judgment against the corporation; and having an execution returned nulla bona, or as to instituting suit against the corporation with a limited period of time, as sometimes provided, would be impossible or nugatory, they are excused. Accordingly, when a corporation becomes insolvent or is dissolved, so that a proceeding against it would be fruitless, it is not necessary for tue creditor to procure a judgment against it and issue an execution thereon before proceeding to enforce the liability of the stockholder. Similarly, compliance by a creditor ·with a provision of a statute requiring judgment and return of execution against the corporation before ·attempting to enforce the liability of stockholders is excused where the corporation has been discharged, and the creditor prosecuting the stockholders proved his claim and had it allowed by the bankruptcy court."

However, in section 376, p. 391, of the same volume, it is said:

"As a prerequisite to a suit in equity against stockholders to enforce their liability for stock subscriptions, a judgment must generally be obtained against the corporation, and an execution issued and returned nulla bona. This rule rests on the ground that equity withholds its aid where there is an adequate remedy at law. If no statutory condition is imposed requiring creditors to proceed first against the corporation, the individual liability of stockholders is regarded as primary; and therefore an action to enforce their statutory liability is maintainable without having obtained a judgment against the corporation, and an execution returned unsatisfied. Very generally, however, creditors are required, either expressly or by necessary implication, to obtain a judgment against the corporation, and have an execution issued thereon returned unsatisfied, as a prerequisite to proceeding against a stockholder to enforce his statutory liability."

It thus appears that the language cited by appellant from the same authority in the next succeeding section has reference only to the sufficiency of an excuse for not first exhausting one's legal remedy before invoking the aid of equity by filing a creditor's bill to subject the unpaid balance of a stock subscription to the satisfaction of the plaintiffs' demand. Indeed, in the cases referred to, it appeared that the creditor did not have the right to statutory relief, such as asserted by appellant in this case, and that by reason of that fact he could resort to a court of equity by a creditor's bill, to the end that in the absence of statutory relief, the creditors of an insolvent corporation might have relief in a court of equity under the trust fund doctrine.

See, also, 8 R. C. L. pp. 19 to 27, inclusive.

One of the authorities relied on by appellant is the decision by the Court of Appeals of New York in Firestone Tire & Rubber Co. v. Agnew, 194 N. Y. 165, 86 N. E. 1116, 24 L. R. A. (N. S.) 628, 16 Ann. Cas. 1150, in which the creditors of an insolvent corporation were allowed a recovery on unpaid stock subscriptions. In that state there was a statute (Laws 1892, c. 688, § 55) which provided that:

"No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall be the amount recoverable,

with costs against the stockholder. No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder."

In that case, as in the one at bar, the corporation had been declared a bankrupt and there was a composition settlement of its debts in the bankruptcy court where the complainants in the case were allowed their pro rata portion of the amount paid and accepted the allowance so made before the institution of the suit. Those proceedings were set up by the creditors as an excuse for noncompliance with the statutory provisions requiring the recovery of a judgment against the corporation, and the issuance of an execution thereon as a condition precedent to a suit against the stockholders upon his stock subscription; and that contention was sustained by the court, and in the course of the opinion the court quoted with approval this announcement in another New York case (Shellington v. Howland, 53 N. Y. 371, 374):

"When the performance of a condition becomes impossible by the operation and effect of a statute—that is, becomes illegal—the performance is excused, and the rights of the parties will be preserved."

However, in that opinion it is pointed out that section 54 of the Stock Corporation Law of the State of New York (Laws 1901, c. 354) provided that:

"Every holder of capital stock not fully paid, in any stock corporation, shall be personally liable to its creditors, to an amount equal to the amount unpaid on the stock held by him for debts of the corporation contracted while such stock was held by him."

It thus appears that by virtue of that provision of the statute the stockholder is made liable primarily to the creditor as well as to the corporation itself, for the full amount of his unpaid stock subscription, and therefore that case is clearly distinguishable from the present suit, in that in this state we have no statute of like import to that of section 54 of the New York statute, set out above. And that statutory provision was noted by the United States Supreme Court in Fourth National Bank v. Francklyn, 120 U. S. 747, 7 S. Ct. 757, 30 L. Ed. 825, as being different from the corporation statutes of Rhode Island, where the case arose, and in which state there was no statute making a stockholder primarily liable to the creditors of the corporation, and in that case recovery against the stockholder was denied.

■ A creditor's bill may be filed by one creditor in behalf and for the benefit of himself and all others who may see fit to join in; and a single creditor may maintain a suit for himself alone if others refuse to join. 7 R. C. L. page 385.

In Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 367, 57 L. Ed. 676, the following was said:

"It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. * * * The theory is that the discharge destroys the remedy, but not the indebtedness."

In Friend v. Talcott, 228 U. S. 27, 33 S. Ct. 505, 57 L. Ed. 718, it is held that a confirmation of a composition settlement in bankruptcy did not bar an action against the bankrupt for fraud and deceit; but no issue of fraud is presented in this case.

Two other decisions cited by appellants, viz., American Imp. Co. v. Lilienthal, 43 Cal. App. 80, 184 P. 692; and Wayne Oil Tank & Pump Co. v. Auto Repair Co., 132 Miss. 527, 97 So. 10, are likewise distinguishable from this case because they involved the enforcement of liens against property of the bankrupts which were expressly exempted from the operation of the bankruptcy act.

We shall not undertake a review of the many other decisions cited by appellants, as so to do would unduly prolong this opinion; we deem it sufficient to say that when properly analyzed, they do not militate against the conclusions we have reached in the case at bar.

■ Defendants' unpaid stock subscriptions, which appellants sought to collect, constituted a part of the property of the corporation at the time of the composition settlement. Section 110, title 11, of the Bankruptcy Act provides that upon appointment and qualification of a trustee of the estate, he shall be vested with title to certain of the property of the bankrupt, designated in that section, and subdivision 6 of paragraph a of that section includes the following: "Rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property." And in Johnson v. Louisville Trust Co. (C. C. A.) 293 F. 857, in which case a writ of certiorari was denied by the Supreme Court, as shown in 264 U. S. 585, 44 S. Ct. 334, 68 L. Ed. 862, it was held that the right of action against the stockholders of a bankrupt Delaware corporation for alleged unpaid subscriptions is in the trustee. To the same effect was the decision in Re Remington Automobile, etc., Co., 153 F. 345, 82 C. C. A. 421, and numerous other decisions cited in notes on pages 474, 475, vol. 3 (Bankruptcy) of the United States Code Annotated. Also see Remington on Bankruptcy, vol. 7, p. 97; Collier on Bankruptcy, vol. 1, p. 459; Showalter v. Laredo Implement Co., 83 Tex. 162, 18 S. W. 491.

■■ It follows then that the choses in action represented by defendants' unpaid stock subscriptions revested in the bankrupt corporation when the composition settlement became effective, under and by virtue of subdivision (f), of section 110 of the Bankruptcy Act, quoted above. And for that reason alone appellants showed no right of recovery under the trust fund doctrine, since such vestiture of title in the corporation with a discharge of its debts necessarily excludes any right of creditors to subject those choses in action to payment of their claims under the trust fund doctrine. And another insuperable obstacle to appellants' right of recovery under that doctrine consists in the absence of enforceable debts in their favor against the bankrupt corporation as a primary basis for their actions, after those debts had been discharged by the composition settlement. Not only is such a showing necessary in a creditor's bill wherein the creditor seeks to subject assets of his debtor to the payment of the creditor's demand against the debtor, but as pointed out in 8 R. C. L. pp. 19 to 21, in some jurisdictions as a condition precedent to his right to that relief he must show a judgment against the debtor, and a return of execution thereon unsatisfied for lack of property on which a levy can be made; although, as stated in other authorities already cited, he is excused from that showing if it appears that nothing could be collected by such a proceeding. And in Spencer v. Anderson, 193 Cal. 1, 222 P. 355, 35 A. L. R. 822, it was said that such an action is in the nature of an equitable garnishment, which necessarily would require the existence of a valid and enforcable debt in favor of the plaintiff against the debtor, as a condition precedent to a recovery against the garnishee to satisfy his debt.

■ And it is of no moment that the discharge of the bankrupt did not extinguish appellants' claims against it, but merely deprived them of any remedy for their enforcement. Announcements by courts to that effect were merely to show that the moral obligation of the bankrupt after discharge will support a new promise to pay the debt. This suit is not founded primarily upon any such new promise on the part of the corporation made after its discharge in bankruptcy, nor could it be properly founded on a mere moral obligation of the corporation to pay the debt after its discharge on account of its bankruptcy, and which is unenforceable and worthless.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

In our former opinion we were in error in saying that it was held in Fourth National Bank v. Francklyn, 120 U. S. 747, 7 S. Ct. 757, 763, 30 L. Ed. 825, that there was no statute of Rhode Island making a stockholder primarily liable to the creditors of the corporation. Upon a more careful examination of that decision we find that the statute of Rhode Island (Laws R. I. 1847, p. 30), under which a stockholder of a manufacturing corporation was sought to be held liable for the debts of the corporation, did provide that:

"The members of every manufacturing company that shall be hereafter incorporated 'shall be jointly and severally liable for all debts and contracts made and entered into by such company until the whole amount of such capital stock fixed and limited by the charter of said company, or by vote of the company in pursuance of the charter, shall have been paid in and a certificate thereof .shall have been made, and recorded in the books kept for that purpose.' "

But in another statute enacted at a later date, and which was in force at the time the cause was tried (Laws 1877, c. 600), it was provided that:

"I. No person shall hereafter be imprisoned, or be continued in prison, nor shall the property of any such person be attached, upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder.

"II. All proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity, conducted according to the practice and course of equity, or by an action of debt upon the judgment obtained against such corporation; and in any such suit or action such stockholder may contest the validity of the claim upon which the judgment against such corporation was obtained, upon any ground upon which such corporation could have contested the same in the action in which such judgment was recovered."

And in the opinion of the Supreme Court in that case the following is said:

"By the decisions of this court, as well as by those of the courts, both state and federal, held within the state and district of Rhode Island, and of the highest court of Massachusetts, where these provisions had their origin and their first judicial construction, this liability can be enforced only in the mode prescribed by the statutes of Rhode Island. The present suit, therefore, not being a bill in equity, or an action upon a judgment against the corporation, which are the only forms of remedy authorized by these statutes, but being an independent action at law upon the original liability of the stockholder, cannot be maintained, and the circuit court rightly so held."

We make this correction in view of the criticism of counsel in their motion for rehearing, with the further observation that that decision, and many others noted in that opinion, also support the conclusion we have reached in the case at bar, that the statutory

remedy against the stockholder prescribed in article 1345 is the only remedy given against a stockholder for his unpaid subscription, and, as shown in the record of this case, there was no basis for recovery under the provision of that article.

The further contention that the stockholders were sureties for the debts of the corporation to the extent of the unpaid balance of their subscription is without merit, since we are unable to conceive any basis for the determination of that principle.

The motion for rehearing is overruled.