## JAMISON COLD STORAGE DOOR CO. v. BROWN.

### No. 15025.

Court of Civil Appeals of Texas.
Fort Worth.
Feb. 25, 1949.

Rehearing Denied March 25, 1949.

Ungerman, Hill & Ungerman and Wm. M. Hill, all of Dallas, for appellant.

Carrington, Gowan, Johnson & Walker and Joe C. Stephens, Jr., all of Dallas, for appellee.

SPEER, Justice.

This is an appeal by Jamison Cold Storage Door Company, a corporation, from an order of the district court of Dallas County denying and overruling its motion to order execution issued against Fred Brown (hereinafter called appellee), alleged to be a subscriber of the capital stock in The Snyder Corporation, for which he had not paid at the time when appellant had obtained a judgment against The Snyder Corporation and execution had been issued thereon and returned nulla bona.

Appellee answered and resisted the motion upon the grounds that The Snyder Corporation had assigned all of its property, including its chose in action against him for his subscribed and unpaid capital stock, to Paul A. Kerin, in trust for the benefit of its creditors and that said trustee as such then owned said chose in action and that he alone had power to enforce it.

The motion of appellant was filed on April 9, 1948 in the court in which it had procured the unsatisfied judgment against The Snyder Corporation. After notice to and answer by appellee, the trial court heard the evidence adduced by the parties and by order "denied and overruled" the motion. This appeal followed.

At appellant's request the court filed findings of fact and conclusions of law. The substance of these findings is:

1. On April 19, 1948 this court rendered judgment for appellant against The Snyder Corporation for $1197.44, with interest from date of judgment.

2. Subsequent to the date of that judgment execution was issued and returned nulla bona.

3. The Snyder Corporation is a corporation under the laws of Texas with a capital stock of $50,000 all subscribed, of which $35,000 has been paid in.

4. Fred Brown (appellee) is a stockholder in The Snyder Corporation, who subscribed for $20,000 of the capital stock and has paid in only $5,000.

5. On February 3, 1948, The Snyder Corporation duly assigned all of its property, including choses in action, rights and causes of action on unpaid stock subscriptions, to Paul A. Kerin, assignee, for the benefit of all its creditors; that said assignment was duly filed and recorded in the deed records of Dallas County, Texas.

6. The bond of the assignee for the benefit of creditors was duly approved by the County Judge of Dallas County, Texas, and recorded in the deed records of said County.

7. Appellant has neither filed nor attempted to file a claim with the assignee for the benefit of creditors.

8. There is property of The Snyder Corporation now in the hands of the assignee for the benefit of creditors.

His conclusion of law was:

"1. That plaintiff (appellant) is not entitled to levy of execution against Fred Brown (appellee)." There is no conflict in the testimony, it is all in documentary form.

Points of error 1 and 2 present substantially the same proposition; in effect, they are:

(1) Error of the court in refusing to render judgment for appellant on its motion under the provisions of Article 1345, R.C.S.; and

(2) Error of the court in overruling appellant's motion for execution against appellee "and assuming appellee's theories to be correct, in not dismissing appellant's motion for execution inasmuch as the defenses raised by Brown were in effect pleas in abatement."

Appellant relies upon the provisions of Article 1345, R.C.S., for the relief sought. In 1874 the Legislature passed laws authorizing the creation of private corporations and set out many of the rights and functions of such corporations when formed. Section 25 of that Act provided that the board of directors or trustees of a corporation could require subscribers for its capital stock to make payment therefor at such times and in such amounts as may be required by the by-laws, and by section 26 for the forfeiture of subscribed stock if payments were not made upon such request. Vol. 8, G.L., p. 122 et seq., Vernon's Ann. Civ.St. art. 1319 et seq., 1335, 1336. Those laws have been amended many times since their enactment. However, some provisions of the early law have remained and are in the present laws on the subject. Sections 25, 26 and 29 have thus been retained in substantially their original language, and they now appear as Articles 1335, 1336 and 1345, R.C.S., respectively. The substance of Article 1345 is that where judgment has been rendered against a corporation and execution has issued thereon and been returned nulla bona, a judgment creditor can file a motion in the court where judgment was obtained showing the facts and after notice the court may order execution to issue against the property of a stockholder to an extent equal to the amount of his subscribed stock unpaid.

If Article 1345 supra were the only law applicable to the situation before us, our task would be easy. Since the passage of the 1874 Act concerning corporations and rights by, against and incidental to them, the Legislature passed what is commonly known as the "Assignment for Benefit of Creditors" Act in 1879. Vol. 8, G.L., p. 1357 et seq. This Act with its amendments now constitute Title 12, Article 261 et seq., R.C.S. The various articles in the title provide that a debtor may assign all of his assets to an assignee or trustee for the benefit of his creditors consenting thereto in proportion to their respective claims; such assignment passes all of said assets to the assignee. If under the assignment the trustee is able to pay each of the consenting creditors as much as one-third of his claim, the debtor will be discharged from further liability thereon. The trustee must give notice of the assignment and creditors desiring to accept thereunder must indicate it within a specified time and a creditor who does not so accept can have no benefits under the assignment; the only relief a non consenting creditor has is set out in Article 271, which reads: "Any creditor not consenting to the assignment may garnishee the assignee for any excess of such estate remaining in his hands after the payment to the consenting creditors (of) the amount of their debts and the costs and expenses of executing the assignment." Appellant was not a consenting creditor.

■ The several provisions of the "Assignment for Benefit of Creditors" Act is one of the means for administering a debtor's estate so that his creditors may receive their respective shares therein without preference to any of the same class who comply with its requirements. A private corporation may avail itself of the "Assignment for Benefit of Creditors" Act. 5 Tex.Jur., p. 95, sec. 40.

■ The form of the assignment in this case is not attacked. It passed to the assignee a stock of merchandise, furniture and fixtures, a lease contract, cash on hand, accounts receivable, choses in action and other property for the purpose of the trust. The rights of the assignor to enforce its claim against appellee Brown for

the unpaid subscribed capital stock was a chose in action and undoubtedly it passed to the trustee for the benefit of the consenting creditors who presented their claims to the assignee. Appellant chose not to consent and present its judgment claim to the assignee; therefore it could not receive any of the proceeds arising from the assets in the assignee's hands until all accepting creditors had been paid as provided in Articles 263, 265 and 271, R.C.S.

The passage of the "Assignment for Benefit of Creditors" Act materially altered the scope of the rights of the judgment creditor of a corporation given under Article 1345. That article still has its place in our legal structure. If the fund which appellant here seeks to reach had not previously passed under the assignment into the trust estate or otherwise passed out of the control of The Snyder Corporation, appellant would have been entitled to rely upon Article 1345. The two statutes are not necessarily destructive one of the other. In such circumstances under familiar rules both may stand in their respective fields.

We have seen no decided case on the precise point before us, notwithstanding the long period of time elapsing since the two laws were enacted.

Appellant makes no contention that it is a consenting creditor under the assignment; it contends that the assignment act does not alter its rights under Article 1345. We believe the property it seeks to reach has passed from the realm covered by Article 1345. Analogies appear in many cases which support our conclusions thus expressed.

The several provisions of the assignment act furnish one of the full, fair and complete systems for the orderly administration of an insolvent person's estate for the benefit of his creditors. True, there are other means of accomplishing similar results in such instances as bankruptcy and receivership. The assignment act, such as we have before us, is not within what is commonly known as an insolvency statute. If an assignment for the benefit of creditors should result in an act of bankruptcy the latter goes further in the matter of a complete discharge of the debtor than would the assignment for the benefit of creditors have gone had it not been superseded by bankruptcy proceedings. These matters were discussed thoroughly in Star v. Johnson, Tex.Civ.App., 44 S.W.2d 429, writ refused, 121 Tex. 195, 47 S.W.2d 608. In that case an assignment for the benefit of creditors had been made and a non consenting creditor caused a writ of garnishment to be issued and served on the assignee or trustee, seeking thereby to reach the property in the hands of the assignee and subject it to the payment of a debt. It was held that funds with the assignee were not subject to garnishment by a creditor. Many authorities are cited in support of the holding. Execution, such as sought by appellant in the instant case, is not different in its essential elements from that of attachment, garnishment and other extraordinary remedies. Trinity Portland Cement Co. v. Naylor, Tex.Civ.App., 33 S.W. 2d 853, writ refused.

The property, a part of which consisted of the chose in action against appellee Brown, had passed to the assignee in this case under the assignment for the benefit of creditors and if it could not be reached by garnishment, as pointed out in the Star-Johnson case, supra, we hold it could not be reached with an execution which by-passed the assignee who held the title. These conclusions are strengthened by the undisputed fact that appellee Brown was no longer indebted to The Snyder Corporation against which appellant held a judgment, but his liability was to the assignee as trustee for the creditors. Therefore the liability of appellee Brown for his unpaid capital stock subscription was not subject to garnishment by appellant and by the same token not subject to execution.

In Trinity Portland Cement Co. v. Naylor, Tex.Civ.App., 33 S.W.2d 853, 855, writ refused, involving a situation similar to the one before us, the court said: "Article 1345 of the statutes confers a right which is in the nature of a writ of garnishment, and, like the statutes providing for the issuance of such a writ, its

requirements must be strictly followed, and only those included in its terms can invoke its aid."

■ In view of the provisions of Article 271, supra, which limits non consenting creditors like appellant in this case to any excess funds left in the hands of the assignee after payment of the consenting creditors, before appellant could participate either directly or indirectly in the assets held by the assignee, the burden of proof was on appellant to show that all consenting creditors had been paid. Kellogg v. Muller, 68 Tex. 182, 4 S.W. 361, 363.

■ There is one phase of appellant's second point, although not entirely clear to us, we have not discussed. The point asserts error in rendering judgment overruling appellant's motion for execution and adds: "and assuming appellee's theories to be correct, in not dismissing appellant's motion for execution, inasmuch as the defenses raised by Brown were in effect pleas in abatement and raised no issue as to the merits on the motion of appellant." As we view the situation, the final outcome of the immediate controversy would have been the same in either event. The finality of the judgment appealed from is not attacked nor do we believe it is subject to attack in this kind of a case on that ground. The judgment as entered is more favorable to appellant than one of dismissal would have been; this for the reason that if conditions should change as a result of the performance of the trust in a way that appellee's liability should revert to The Snyder Corporation, appellant could yet pursue the remedy it attempted in this controversy.

The third point of error complains because the trial court refused to file "Conclusions of Law in this case setting out the theory and legal basis upon which he rendered judgment denying and overruling appellant's motion for execution."

■ Appellant contends that the conclusion filed by the court was not sufficient. We think otherwise. The record shows that the court found the facts substantially as we have briefly pointed out above. The findings were followed by "Conclusion of law—1. That plaintiff (meaning appellant) is not entitled to levy of execution against Fred Brown (meaning appellee)." We do not construe Rule 296, Texas Rules of Civil Procedure, to mean that a trial court must do more than find the facts as they exist and follow such findings with "Conclusions of Law," which in his judgment the facts compel. He is not required to set out in minute legal detail his every reason and theory for having reached the legal conclusion expressed. If such was necessary much difficulty would arise in drawing the line of demarcation between his real conclusions of law and his theory, reasons, legal basis and even argument in support of those conclusions of law. In this case the plain import of the court's conclusion of law, to paraphrase it, means: "Based upon the facts found I conclude as a matter of law that appellant is not entitled to execution against appellee." If this is a fair interpretation of the court's conclusion, we consider it definite and sufficiently plain of meaning. In support of point 3 under consideration appellant cites Rothschild Bros. Hat Co. v. Rolnick Bros., Tex.Civ.App., 26 S.W.2d 430, and Grant v. Grant, Tex.Civ.App., 286 S.W. 647. We have carefully studied what is there said and find no fault in them. As expressed by the court in the last cited case, each situation involved must be considered in arriving at its solution. So it is with the instant case. We think the court's expressed "Conclusion of Law" not susceptible to the criticism leveled at it.

For the reasons set out we overrule all points of error and affirm the judgment of the trial court.